UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CATHERINE DUNN MUMPHREY | * | CIVIL ACTION |
| | * | |
| versus | * | NO. |
| | * | |
| ST. TAMMANY PARISH SCHOOL BOARD, | * | SECTION |
| STEVE ALFONSO, GEORGE BODE, RANDALL | * | |
| "RANDY" SMITH, INDIVIDUALLY AND IN HIS | * | |
| OFFICIAL CAPACITY AS SHERIFF OF | * | |
| ST. TAMMANY PARISH, AND ST. TAMMANY | * | |
| PARISH SHERIFF'S DEPUTY | * | |
| JANE DOE | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT FOR DAMAGES**

COMES NOW, Catherine Dunn Mumphrey, Plaintiff herein, and for Complaint against the above-named Defendants, with respect represents and avers as follows:

**I.**

**JURISDICTION**

1.

This Honorable Court has jurisdiction pursuant to the Fourth, Fifth and Fourteenth Amendments of the United States Constitution and the statutes enabling same and the issues herein raise substantial questions of federal law within the meaning of 28 USC §1331.

2.

This Honorable Court has jurisdiction pursuant to 42 USC §1983, §1985(3) and §1986.

3.

This Honorable Court has jurisdiction pursuant to the Americans With Disabilities Act, 42 USC §12101.

4.

This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC §1367.

5.

Venue is proper in the United States District Court for the Eastern District of Louisiana pursuant to 28 USC §1391(b).

II.

**PARTIES**

6.

Plaintiff is Catherine Dunn Mumphrey, a former special needs teacher at E.E. Lyon Elementary School in St. Tammany Parish.

7.

MADE DEFENDANTS HEREIN ARE:

The St. Tammany Parish School Board is the juridical entity responsible for the administration of the public schools of St. Tammany Parish.

8.

Steve Alfonso is an administrator of Human Resources with the St. Tammany Parish Public School System.

9.

George Bode is an employee of the St. Tammany Parish School Board and, upon information and belief, is employed in the Human Resources section, department, or division of the St. Tammany Parish School System and acted upon instructions of the Human Relations Department supervised by Steve Alfonso.

10.

Randall "Randy" Smith, individually and in his official capacity as Sheriff of St. Tammany Parish.

11.

Deputy Sheriff Jane Doe is an unidentified female sheriff's deputy employed by the St. Tammany Parish Sheriff's Office in the intake section of the Parish jail under the supervision of Sheriff Smith.

### III.

### FACTS

12.

At all times material hereto, Catherine Mumphrey ("Mumphrey") was employed by the St. Tammany Parish School System as a special needs pre-K and Kindergarten teacher at E.E. Lyon Elementary School in St. Tammany Parish. Plaintiff was diagnosed with dyslexia, a learning and communication disorder, at an early age. She overcame this disorder after extensive therapy and the experience formed in her a determination to devote her adult life to helping children with special learning needs. Fortified with this resolve, she relentlessly pursued a career as an educator and earned a Master's Degree in Education – Early Intervention. She holds a Teaching Certificate, qualified in Special Education grades pre-K and Kindergarten.

13.

On or about May 22, 2024, Plaintiff was presented with a special needs child who refused to move from a classroom toilet area. When she resisted, Plaintiff took the child by her hand and

wrist and guided her toward the desired location. In the course of doing so, the child dropped to the floor in passive resistance.

14.

Louisiana Revised Statute 17:416(A)(1)(b)(1) provides in pertinent part that "… each teacher may take disciplinary action to correct a student who violates school rules or who interferes with an orderly educational process." This goal - maintaining an orderly education process - is precisely why Plaintiff acted as she did.

15.

Defendant St. Tammany Parish School Board cannot dispute this characterization of events, since they made precisely this argument *in Mumphrey's defense* in other proceedings (Case 2:24-cv-02096, Sec. P) before the Court, specifically in their Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) dated December 31, 2024, at p.14.

16.

E.E. Lyon Elementary School maintains an electronic surveillance system in special needs classrooms. The incident came to the attention of Principal Lauryn Faciane who instructed Plaintiff not to return to the campus as an investigation had been initiated.

17.

A few days later, Plaintiff was contacted by telephone by the St. Tammany Parish Sheriff's Office and was requested to present herself at the Sheriff's Office for an interview concerning the incident.

18.

Concerned that the Sheriff's Office had become involved, Plaintiff consulted Attorney Mark Vicknair who contacted the Sheriff's Office and was told that Plaintiff was the subject of a

felony arrest warrant.

19.

Assuring the Sheriff's Office that a formal arrest was not necessary, Mr. Vicknair agreed that he would accompany Plaintiff to the Parish Jail to self-surrender at an appointed hour on June 4, 2024.

20.

As agreed, Plaintiff presented herself with her attorney and her mother at the Parish jail on June 4, 2024.

21.

Upon arrival, Plaintiff was informed that she would be booked on felony charges and, therefore, it was necessary that she be processed through intake. Her attorney and her mother were informed that they would not be permitted to accompany Plaintiff through the intake process.

22.

Thereafter, Plaintiff was escorted into the jailhouse proper and instructed to remove her clothing and put on a prison jump suit. She was then taken to a jail cell.

23.

A short while later, Defendant Sheriff's Deputy Jane Doe took Plaintiff from the cell, telling her that someone from HR (Human Resources) needed to speak with her.

24.

Plaintiff was then taken to an interrogation room where Defendant George Bode was waiting. Bode introduced himself as a representative of HR. He assured Plaintiff that he sympathized with her situation and that he was there to help, whereupon he presented plaintiff

with a document expressing her desire to resign from her employment as a teacher which Bode told her to sign.

25.

Defendant Bode advised Plaintiff that it was in her best interest to resign as the alternative was termination, under which circumstances her arrest, and the pending charges would be disclosed to all future potential employers and identified as the cause for termination.

26.

Plaintiff requested an opportunity to give the resignation document due consideration and cool reflection in less stressful and oppressive conditions, as well as a chance to discuss it with her husband, but Defendant Bode responded that Plaintiff had to sign the document before she was booked, which was imminent.

27.

At the inception of the discussion, Plaintiff asked to consult her lawyer but Bode told her that was not necessary as the discussion and the document did not concern the criminal matter.

28.

Defendant Bode assured Plaintiff that by resigning she would preserve the possibility of being rehired in the future, whereas termination would preclude any such possibility.

29.

Defendant Deputy Sheriff Jane Doe was continuously present during the entire discussion but made no effort to interrupt or intervene except to remark, at one point, "I'd sign it if I were you."

30.

Plaintiff relented, succumbing to the demands of Defendant Bode as supported by Defendant Sheriff's Deputy Jane Doe, and signed the document which Defendant Bode then countersigned.

31.

Upon countersigning the document Defendant Bode handed it to Defendant Sheriff's Deputy Jane Doe and led Plaintiff to understand that a copy would be provided to her when her clothing and personal effects were returned to her upon her release from custody.

32.

At the bottom of the document was a space inscribed "Do Not Rehire." To the best of Plaintiff's recollection, this space was unmarked at the time she signed the resignation document, as such a mark would have been inconsistent with the assurances of potential future re-employment made by Defendant Bode. The present document shows the "Do Not Rehire" space was circled at some subsequent point.

33.

Upon executing the document, Plaintiff was led out of the interrogation room to complete the booking process.

34.

Upon information and belief, Plaintiff avers that a person or persons within the Sheriff's Office under the supervision of Defendant Sheriff Randy Smith coordinated and conspired with a person or persons within the Office of Human Resources under the supervision of Defendant Steve Alfonso in order to notify Defendant George Bode that Plaintiff would be in custody at the Parish Jail on a specific date and time.

35.

For several months prior to the events giving rise to the instant lawsuit, and through the present day, Plaintiff has been under treatment for post-partum anxiety, a condition which arose after the premature birth to her youngest child, Samantha. As its name implies, the disorder is characterized by acute anxiety, indecisiveness, panic attacks and an emotional fragility in the face of stressful circumstances.

36.

Plaintiff's medical condition is one which substantially limits one or more major life activities within the meaning of 42 USC §12102(2).

37.

Plaintiff's disability was known to the Defendant St. Tammany Parish School Board, inasmuch as her treatment was paid for, in whole or in part, by the school system's medical benefit plan.

38.

In addition to constructive notice afforded via the school system's medical plan, the school board was made aware of Plaintiff's disability in the course of interaction with colleagues and superiors at E.E. Lyon Elementary School.

39.

Plaintiff's daughter's early infancy was punctuated by bouts of illness which not uncommonly afflict premature birth children and, as a consequence, Plaintiff periodically had to take leave from work. By December 2023, Plaintiff had exhausted all of her allowable leave for the school year. These facts were known to the administration at E.E. Lyon Elementary.

40.

At some point in February 2024, after the Mardi Gras break, Plaintiff had an informal conversation with Principal Faciane and disclosed that she was under treatment for post-partum anxiety disorder. Principal Faciane responded that she had noticed a change in Plaintiff's demeanor and deportment. Plaintiff then advised Principal Faciane that she hoped to make progress with her therapy and that her dosage of prescription medication, Zoloft, had been doubled.

41.

Throughout the early Spring of 2024 Plaintiff continued to exhibit the symptoms of her disability which manifested, for example, in episodic panic attacks, during which she froze in mid-activity, and in bouts of uncontrollable weeping.

42.

These episodic events prompted several Just Cause hearings in which Plaintiff was called upon to defend her conduct against charges of unprofessional behavior in front of students and staff. Rather than address the role of Plaintiff's disability, the school board chose to treat these incidents as warranting punitive correction.

43.

The last of three (3) such Just Cause hearings was held on May 14, 2024, following which Principal Faciane corresponded with the Office of the Superintendent to report that a hearing had been held "to discuss consistent issues' with, inter alia, "unprofessional behavior in front of students and staff." Faciane went on to note in her letter that this was Plaintiff's third Just Cause hearing for the same reasons and closed by recommending that Plaintiff be suspended

for two (2) days without pay as a suitable punitive measure. At no time did Faciane recommend supportive counseling which was available under an existing school board program.

44.

Following Principal Faciane's letter of May 15, 2024, Plaintiff was given notice on May 16, 2024, that she was summoned to a hearing at the Central Office to confirm the penalty recommended by Principal Faciane. This hearing, held on May 24, 2024, was attended by Faciane, Mary Hart (Vice-Superintendent for HR) and other administrative staff and, despite the incident at E.E. Lyon Elementary only two days earlier, no discussion was had about Plaintiff's known disability. Instead, the punitive action recommended by Faciane was confirmed.

45.

It is the expectation of the La. Dept. of Education that all teachers of children with special needs be provided with specialized training in classroom management. This training, called NCI training (an acronym meaning "Non-violent Crisis Intervention") is to be furnished by the school system to provide teachers with the skill set necessary to deal with the unique challenges of special needs classroom management and how to de-escalate confrontation with recalcitrant special needs students. This required training was never made available to Plaintiff by the school board.

46.

Plaintiff is a qualified individual with a temporary and transitory disability of which Defendant St. Tammany Parish School Board was made aware but chose to treat as a disciplinary matter. In so doing, Defendant acted with malice or reckless indifference toward Plaintiff and her rights under the ADA. Defendant, therefore, is liable for punitive damages.

47.

The events described herein significantly exacerbated Plaintiff's condition, caused a regression of her treatment, and elongated her course of recovery.

## IV.

## **FIRST CLAIM**

48.

Plaintiff asserts claims under 42 U.S.C. 1983 for violations of her constitutional rights, including her rights to due process, privacy, and protection against self-incrimination.

49.

The Defendants, acting under color of law, collectively and individually conspired and colluded to abridge Plaintiff's rights under the Constitution and laws of the United States in the following non-exclusive particulars.

50.

Defendants, acting under color of state law, conspired to and actually did utilize the police power of the St. Tammany Parish Sheriff's Office to secure the forfeiture of Plaintiff's right to due process in connection with her employment.

51.

Defendants, acting under color of state law, compromised Plaintiff's good name and professional reputation and violated her right to privacy through conspiracy, trickery and deceit.

52.

Defendants, through their agents and under color of state law, deprived Plaintiff of her right to counsel, despite her request to exercise that right.

53.

Defendants, and their agents acting under color of state law, illegally obtained a statement from Plaintiff in the form of her resignation in violation of her Fifth Amendment protection against self-incrimination.

54.

Defendants, through resort to the law enforcement authority of the Sheriff's Office, procured Plaintiff's resignation in circumvention of procedural due process provisions at state law.

55.

Defendant, St. Tammany Parish School Board, with actual knowledge of Plaintiff's disability, failed in general to provide her with reasonable accommodation as required by the ADA, 42 USC 12112(b)(5)(A), specifically in the form of counseling and additional training in the management of special needs children.

56.

Defendants, St. Tammany School Board and George Bode, in violation of the ADA, not only failed to reasonably accommodate Plaintiff's disability but, instead, maliciously and callously exploited that disability in pursuit of the resignation they desired.

57.

Defendants collectively, acting under color of state law, contrived to deprive Plaintiff of the reasonable expectation of an ongoing career as a teacher in her future life.

V.

**SECOND CLAIM**

58.

The Defendants, collectively and individually, conspired and colluded to inflict harm upon Plaintiff in the following non-exclusive particulars under state law.

59.

By choosing to approach Plaintiff while she was in custody and knowing of her fragile emotional disability, Defendants St. Tammany School Board and George Bode intentionally and maliciously inflicted emotional distress upon Plaintiff through intimidation, duress and deception.

60.

Defendants, St. Tammany Parish School Board, George Bode and his superior Steve Alfonso, contrived to deprive Plaintiff of her due process rights under state law and the collective bargaining agreement then in effect. By securing her resignation through resort to the coercive power of the Sheriff's Office and Sheriff Randy Smith, they precluded her from exercising administrative and contractual remedies under state law.

61.

Defendant, St. Tammany Parish School Board, through its Superintendent Frank Jabbia, defamed Plaintiff in a public statement released to the media on June 6, 2024. In the media account Plaintiff was identified with particularity by name, age, the school at which she worked, and town of residence and disclosed that she had been charged with felony cruelty to a juvenile with disabilities. All of the media accounts included the detail that Plaintiff was no longer an employee of the school system, implying that she had been fired.

62.

Supt. Frank Jabbia consented to be interviewed by television media despite a cautionary admonition by law enforcement that the matter was still under investigation and no further details would be provided beyond the fact of arrest.

63.

In the course of his interview Jabbia asserted that "… this type of behavior is absolutely unacceptable. We took immediate and appropriate action in this situation." thus implying culpability and termination in a matter still under investigation.

64.

Jabbia's videotaped remarks were part of reportage which included interviews of local residents who expressed outrage and disgust directed against Plaintiff.

65.

Jabbia's defamatory remarks were widely disseminated and are still available today in both videotape and print form on the internet.

66.

Jabbia's self-exculpatory remarks on behalf of the school board, carried by all of the major television networks, were intended to burnish the tarnished reputation of the school board at Plaintiff's expense and thus may be considered malicious.

67.

By putting Plaintiff in a false light, Jabbia caused damage to Plaintiff's standing in the community, held her up to public shame, disgrace, disrepute and opprobrium, and compromised the integrity of the investigation process in which Plaintiff was then involved.

68.

Jabbia's public remarks less than 48 hours after Plaintiff's meeting with Defendant Bode gave lie to Bode's false assurances by which he had obtained Plaintiff's resignation and, to the contrary, virtually guaranteed that Plaintiff would never be re-employed in the teaching field.

69.

As a consequence of Jabbia's remarks and the public response thereto, Plaintiff's already impaired psychological state was aggravated and exacerbated, reversing previous therapeutic improvement and causing her treatment to be more complicated and protracted.

70.

Jabbia's widely distributed disparaging public remarks prejudiced Plaintiff's right to an unbiased jury pool in any subsequent criminal proceedings.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A. Plaintiff seeks a judgment for compensatory and punitive damages, including the expense of ongoing therapy, in an aggregate amount to be determined at trial.

B. Reasonable attorney fees pursuant to 42 USC §1988.

C. An award of costs and expenses to be determined by the Court.

D. Interest on all amounts so awarded from the date of harm.

E. Trial by jury as to all issues.

F. Any and all other relief which the Court may deems appropriate.

Respectfully submitted,

*/s/ Robert E. Couhig III*
**PATRICK E. O'KEEFE (#10186)**
pokeefe@couhigpartners.com
**ROBERT E. COUHIG, III (#29811)**
rcouhig@couhigpartners.com
**JONATHAN P. LEMANN (#26380)**
lemannjp@couhigpartners.com
**RALPH H. WALL (#22667)**
rwall@couhigpartners.com
Phone: (504) 565-3725
**COUHIG PARTNERS, LLC**
3250 Energy Centre
1100 Poydras Street
New Orleans, LA  70163
Fax: (504) 588-9750
*Attorneys for Plaintiff, Catherine Dunn Mumphrey*