UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CATHERINE MUMPHREY | CIVIL ACTION |
| VERSUS | NO. 25-1111 |
| ST. TAMMANY PARISH SCHOOL BOARD, ET AL. | SECTION "N" |

**ORDER AND REASONS**

Before the Court is the Motion to Dismiss of Defendant Sheriff Randall Smith, in both his individual and official capacity, in which he asks the Court to dismiss with prejudice all claims against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to find that he is entitled to qualified immunity and to dismiss the claims.[1] Plaintiff Catherine Dunn Mumphrey filed an opposition,[2] though she failed to address Smith's substantive arguments, and Smith filed a reply in further support of his motion.[3] Having considered the parties' briefing, the record, and applicable law, the Court issues this Order and Reasons granting Smith's motion to dismiss the claims against him.

**BACKGROUND**

Mumphrey was formerly employed as a special needs teacher at an elementary school in the St. Tammany Parish School System. On or about May 22, 2024, an incident occurred between Mumphrey and a student that led the St. Tammany Parish Sheriff's Office to seek a felony warrant for her arrest.[4] Mumphrey arranged to

---

[1] Rec. Doc. 43.
[2] Rec. Doc. 44.
[3] Rec. Doc. 45.
[4] Rec. Doc. 36 ¶¶ 14, 18-22.

surrender at the Parish jail, and on June 4, 2024, she presented herself for booking accompanied by counsel and her mother.[5]

Mumphrey alleges that upon her arrival, she was separated from her attorney and her mother, changed into a jail uniform, and placed in a cell.[6] Deputy Jane Doe then brought her to a room where George Bode, a representative of the St. Tammany Parish School Board's Human Resources department, was waiting.[7] Bode presented her with a resignation letter and told her she needed to sign it before she was booked, warned that the alternative was termination, and represented that resigning would preserve the possibility of future rehire.[8] When Mumphrey allegedly asked to consult her attorney, Bode responded that doing so was unnecessary because the document "did not concern the criminal matter."[9] Deputy Doe was present throughout and, at one point, allegedly remarked, "I'd sign it if I were you."[10] Mumphrey signed the letter; Bode countersigned it.[11] Mumphrey further alleges that a "Do Not Rehire" notation on the document was circled at some later point.[12]

Mumphrey connects Smith to these events by alleging that "a person or persons within the Sheriff's Office under the supervision of Defendant Sheriff Randy Smith coordinated and conspired with a person or persons within the Office of Human Resources … in order to notify Defendant George Bode that Plaintiff would be in

---

[5] *Id.* ¶¶ 20-21.
[6] *Id.* ¶¶ 22-23.
[7] *Id.* ¶ 25.
[8] *Id.* ¶¶ 26-29.
[9] *Id.* ¶ 28.
[10] *Id.* ¶ 30.
[11] *Id.* ¶ 31.
[12] *Id.* ¶ 33.

custody at the Parish Jail on a specific date and time."[13] Mumphrey does not allege that Smith personally participated in the resignation encounter or the booking.[14]

Smith seeks dismissal with prejudice under Federal Rule of Civil Procedure 12(b)(6) of Mumphrey's claims of conspiracy to violate her constitutional rights.[15] In the alternative, if the Court does not dismiss those claims, Smith claims he is entitled to qualified immunity under federal and state law, and thus, the claims should be dismissed.[16]

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of her claim that would entitle her to relief.[17] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] The Court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion

[13] *Id.* ¶ 35.
[14] *See generally* Rec. Doc. 36.
[15] Rec. Doc. 43.
[16] *Id.*
[17] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[19] *Id.*

to dismiss."[20] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"[21] or "naked assertion[s]"[22] devoid of "further factual enhancement"[23] are not sufficient.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[24] "Determining whether a complaint states a plausible claim for relief [is]… a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[25] "Although detailed factual allegations are not required," "[d]ismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[26]

Under Fifth Circuit precedent, courts generally should not grant a motion to dismiss solely because it is unopposed, without considering the merits of the arguments.[27] Because dismissal with prejudice "denies a litigant the opportunity to be heard and operates as an adjudication on the merits," this "severe sanction" is reserved for "extreme circumstances," such as where a litigant has egregiously and continuously refused to abide by the court's deadlines.[28] Thus, despite Mumphrey's failure to file a substantive opposition, the Court evaluates the merits of the motion

---

[20] *S. Christian Leadership Conf. v. Sup. Ct. of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citation modified).
[21] *Iqbal*, 556 U.S. at 678.
[22] *Twombly*, 550 U.S. at 557.
[23] *Id.*
[24] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).
[25] *Id.*
[26] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (citing *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir.1986)).
[27] *Webb v. Morella*, 457 F. App'x 448, 452 & n.4 (5th Cir. 2012) (discussing precedent).
[28] *Id.* (citation modified).

to dismiss.

## LEGAL ANALYSIS

Smith argues alternatively that Mumphrey's claims against him are barred under *Heck v. Humphrey*,[29] or that qualified immunity protects him from Mumphrey's individual-capacity claims while she also fails to state an official-capacity claim. The Court addresses each in turn.

### I. *Heck v. Humphrey* does not bar Mumphrey's claims.

The *Heck* doctrine "prohibits suit under § 1983 if success on the claim would necessarily imply that a prior conviction or sentence is invalid."[30] Where a judgment for the plaintiff would have that effect, the claim may not proceed unless the plaintiff demonstrates that the conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[31] The rule preserves the "finality and consistency" of criminal judgments by forbidding the use of § 1983 to collaterally attack them.[32]

The inquiry is "fact-intensive, requiring [the Court] to focus on whether success on the . . . claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal

---

[29] *Heck v. Humphrey*, 512 U.S. 477 (1994).
[30] *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020) (citing *Heck*, 512 U.S. at 486-87).
[31] *Id.* (quoting *Heck*, 512 U.S. at 487).
[32] *Id.* (quoting *Heck*, 512 U.S. at 487).

conviction."[33] The Court accordingly compares the elements of the offense of conviction against the proof required to prevail on the civil claim and asks whether a judgment for Mumphrey would **necessarily** imply that her conviction is invalid.

Mumphrey's guilty plea for a simple battery establishes a single operative fact: that on or about May 22, 2024, she intentionally used force or violence upon the child, in violation of La. Rev. Stat. Ann. § 14:35.[34] Her § 1983 claim, however, rests on a different set of facts, on a different day, at a different place. Mumphrey alleges that during her booking at the St. Tammany Parish Jail, she was coerced into signing a resignation, denied the assistance of counsel during that period of coercion, and made the subject of a conspiracy to extract that resignation.[35]

To prevail on those claims, Mumphrey need not negate any element of simple battery, or prove any facts inherently inconsistent with her guilty plea. A fact finder could conclude both that Mumphrey committed a battery on May 22 and that her constitutional rights were violated when she was allegedly coerced into resigning her employment during the booking process on June 4; the two findings are not incompatible.

Mumphrey alleges deprivation of due process and her right to counsel while she was allegedly pressured into resigning her employment on June 4.[36] But whether she was unconstitutionally pressured into resigning, while barred from

---

[33] *Id.* (citation modified); *see Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008).
[34] Rec. Doc. 36 ¶ 86 ("In the course of her prosecution for Felony Cruelty to Juveniles Ms. Mumphrey was offered and accepted a plea bargain to misdemeanor Simple Battery.").
[35] *Id.* at 11.
[36] *Id.* ¶¶ 50, 52.

consulting her attorney, has no bearing on whether she used force on a minor, and a judgment in her favor on this theory would leave the factual basis for her plea undisturbed.[37] And, to be clear, the denial of due process and right to counsel that Mumphrey alleges occurred in the context of the deprivation of her *employment*—unrelated to her criminal charges.[38] Nor is there any allegation that Mumphrey admitted in her resignation that she had engaged in any element of battery. To the contrary, Mumphrey alleges that she understood she could be rehired in the future if she resigned. And, finally, her privacy theory seemingly concerns the disclosure of her arrest, which has no bearing on the fact of her conviction.[39]

Smith's argument—that these claims are barred because they "should have been raised … in her criminal trial"—misapprehends *Heck*.[40] *Heck* is not an exhaustion rule, and it does not bar civil claims simply because they could, in theory, have been litigated alongside the criminal case.[41] It asks only whether a civil judgment would be irreconcilable with the standing conviction. Here, the answer is no.

Because success on Mumphrey's § 1983 claims would not "necessarily imply

---

[37] Simple battery is "a battery committed without the consent of the victim." La. Rev. Stat. Ann § 14:35(A). A battery, in turn, is "the intentional use of force or violence upon the person of another." *Id.* § 14:33. The offense thus required, and Mumphrey's plea established, only that she intentionally applied force to a child on May 22, 2024. None of her § 1983 theories, each directed at the circumstances of her June 4 booking, requires negation of any of the elements of battery.

[38] Rec. Doc. 36 at 6; *see Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) ("In other words, once a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived. *Barrientos v. United States,* 668 F.2d 838, 842 (5th Cir.1982). This includes all claims of ineffective assistance of counsel."). There is no dispute that Mumphrey was represented by counsel during the criminal proceedings. *See, e.g.*, Rec. Doc. 36 at ¶¶ 21-22.

[39] Rec. Doc. 36 ¶¶ 61-67.

[40] Rec. Doc. 43-1 at 5.

[41] *Heck*, 512 U.S. at 489 ("We do not engraft an exhaustion requirement upon §1983.").

the invalidity" of her conviction, *Heck* does not bar them.[42]

## II. Mumphrey fails to allege any violation of a constitutional right by Smith.

To overcome Smith's defense of qualified immunity, Mumphrey must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[43] Mumphrey does not identify the constitutional provisions (with exception of the Fifth Amendment) underlying the "non-exclusive particulars" of the alleged rights violations;[44] she pleads conduct rather than rights. Construing the allegations in Mumphrey's favor, the Court reads her complaint to assert deprivations of due process, the privilege against self-incrimination, the right to counsel, and the right to privacy in arrest records. Because these rights do not reach the alleged conduct as a matter of law, the Court resolves the motion at the first prong. And, because a § 1983 conspiracy claim "is not actionable without an actual violation of section 1983,"[45] the absence of an underlying violation defeats the conspiracy claim as well.[46]

### A. Self-Incrimination

The Fifth Amendment privilege against compelled self-incrimination is a "fundamental trial right" that is violated "only at trial,"[47] when a compelled

[42] *Id.* at 487.
[43] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).
[44] Rec. Doc. 36 ¶ 49.
[45] *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (citation modified).
[46] *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) ("A conspiracy by itself, however, is not actionable under section 1983.").
[47] *Chavez v. Martinez*, 538 U.S. 760, 767 (2003) ("Here, Martinez was never made to be a "witness" against himself in violation of the Fifth Amendment's Self–Incrimination Clause because his statements were never admitted as testimony against him in a criminal case."); see *United States v. Verdugo–Urquidez,* 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination guaranteed by

statement is used against the accused in a criminal case. Mumphrey alleges she was pressured during her booking, *to sign a resignation form*.[48] She does not allege that the resignation was ever introduced against her in a criminal proceeding; in fact, her conviction rests on her own guilty plea.[49] Because no compelled statement was used against her in any criminal trial, the privilege was not violated, and thus, she fails to allege a § 1983 claim.

**B. Right to Counsel**

Mumphrey alleges that she asked to consult her attorney during the resignation discussion and was refused.[50] No right to counsel attached to that conversation under either the Sixth or the Fifth Amendment. The Sixth Amendment right to counsel is "offense specific" and attaches only to a charged offense as well as any uncharged offenses that would be considered the same offense.[51] The resignation discussion was not a stage of Mumphrey's prosecution; by her own account, it concerned her employment.[52] A conversation about an employment document is not a critical stage of a criminal case, and the Sixth Amendment right to counsel does not attach to it. Nor does the Fifth Amendment right to counsel provide grounds for Mumphrey's claim. That right is triggered by custodial *interrogation*: questioning by

the Fifth Amendment is *a fundamental trial right* of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, *a constitutional violation occurs only at trial*" (citation modified)); *Withrow v. Williams,* 507 U.S. 680, 692 (1993) (describing the Fifth Amendment as a "'trial right' ").

[48] Rec. Doc. 36 ¶ 53 ("Defendants, and their agents acting under color of state law, illegally obtained a statement from Plaintiff in the form of her resignation in violation of her Fifth Amendment protection against self-incrimination.").

[49] *Id.* at 16.

[50] *Id.* at 6.

[51] *Texas v. Cobb*, 532 U.S. 162, 166, 173 (2001)

[52] *See* Rec. Doc. 36 ¶¶ 26-31 (discussing the signing of the resignation letter).

law enforcement reasonably likely to elicit an incriminating response.[53] The resignation discussion was neither. It was not an interrogation, and it was not conducted by law enforcement. Rather Mumphrey alleges that a human-resources representative of the School Board presented the document to her.[54] Again, Mumphrey has not alleged a constitutional violation, and her § 1983 claim fails.

**C. Right to Privacy**

Mumphrey alleges that "Defendants" invaded her right to privacy, apparently through the disclosure of her arrest.[55] The claim fails as to Smith on two independent grounds.

First, Mumphrey alleges no disclosure by Smith. The only public disclosure she alleges is a statement to the media by the School Board's Superintendent on June 6, 2024.[56] The privacy theory therefore fails against Smith. Second, even setting attribution aside, Mumphrey identifies no clearly established right against the disclosure. The fact of an arrest is an official act and a matter of public record.[57] The Fifth Circuit has not held that the disclosure of public arrest information implicates

---

[53] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) ("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."); *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980) ("We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent… that the police should know are reasonably likely to elicit an incriminating response.").
[54] Rec. Doc. 36 ¶ 25.
[55] It is not entirely clear what privacy right Mumphrey invokes. The operative complaint alleges only that "Defendants, acting under color of state law, compromised Plaintiff's good name and professional reputation and invaded her right to privacy through conspiracy, trickery and deceit." The Court construes the Mumphrey's complaint as alleging a deprivation of privacy.
[56] Rec. Doc. 36 ¶¶ 61-64.
[57] *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) ("Thus even the prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the information involved already appears on the public record.").

a constitutional privacy interest, and those circuits that have addressed the question have held that it does not.[58] Whatever privacy interest Mumphrey may assert, it was not clearly established at the time of the conduct alleged.

**D. Due Process**

Mumphrey's due process theory fails because Smith did not deprive her of any rights. Under Louisiana law, a public-school teacher's entitlement to continued employment—and thus any property interest cognizable under the Fourteenth Amendment—arises only from tenure.[59] A tenured teacher may be removed only for an enumerated cause and upon statutory process. A teacher without tenure "may be discharged ... without notice or a hearing, so long as valid reasons ... are expressed in writing by the Superintendent."[60] Mumphrey does not allege that she was ever a tenured teacher.[61] The Court need not decide whether Mumphrey has pleaded a protected property interest, however, because any such interest would arise from her employment relationship with the *School Board*. Mumphrey did not allege that Smith ever deprived her of a property interest in her employment. By Mumphrey's own account, the School Board's representative presented the resignation, urged her to sign, and countersigned it.[62] The only allegation connecting Smith to that conduct is the claim that unidentified members of his office "conspired" to facilitate it. The due

---

[58] *See, e.g.*, *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995) ("[G]overnment disclosures of arrest records . . . do not implicate the right to privacy.") (citation modified); *Paul P. v. Verniero*, 170 F.3d 396, 403 (3d Cir. 1999); *cf. Lott v. City of Lubbock*, 184 F.3d 819 (5th Cir. 1999) (per curiam) (noting this consensus while resolving on other grounds).

[59] *In re Richard*, 379 So. 3d 849, 855-56 (La. Ct. App. 2024).

[60] *Tate v. Livingston Par. Sch. Bd.*, 391 So. 2d 1240, 1242 (La. Ct. App. 1980); *see* La. Rev. Stat. Ann. §§ 17:442, 17:443.

[61] *See generally* Rec. Doc. 36.

[62] *Id.* ¶ 25.

process theory therefore rises and falls with the conspiracy. Because the conspiracy claim against Smith fails, the due process claim also fails.

**E. Section 1983 Conspiracy**

A conspiracy claim under § 1983 "is not actionable without an actual violation of section 1983."[63] And where the claim is actionable, it requires "an agreement among the alleged co-conspirators to deprive [the plaintiff] of [her] constitutional rights."[64] The operative facts of the alleged agreement must be pled with specificity. Mere conclusory allegations of conspiracy will not suffice.[65]

Two independent deficiencies defeat the conspiracy claim against Smith.[66] First, as to Mumphrey's self-incrimination, right-to-counsel, and privacy theories, the operative complaint alleges no underlying constitutional violation.[67] A conspiracy to engage in conduct that violates no constitutional right is not actionable, and these theories therefore fail as to Smith for the same reasons they fail on their own terms.[68]

Second, as to the due process theory, Mumphrey fails to allege an agreement, or any act by Smith, with the specificity the law requires. The allegation connecting Smith to the resignation is the following:

---

[63] *Hale*, 45 F.3d at 920 (citation modified).
[64] *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019) (per curiam); *see also Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994).
[65] *Montgomery*, 759 F. App'x at 314 (per curiam) ("Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983.") *See also McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989) (citation modified) ("It is now well settled in this Circuit that 'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy.").
[66] Rec. Doc. 36 at 7.
[67] *See supra* parts-A-D.
[68] *Hale*, 45 F.3d at 921.

> Upon information and belief, Plaintiff avers that a person or persons within the Sheriff's Office under the supervision of Defendant Sheriff Randy Smith coordinated and conspired with a person or persons within the Office of Human Resources under the supervision of Defendant Steve Alfonso in order to notify Defendant George Bode that Plaintiff would be in custody at the Parish Jail on a specific date and time.[69]

This allegation does not identify *who* within the Sheriff's Office participated, *when* or *how* any agreement was reached, or *what* Sheriff Smith is alleged to have done; it pleads "coordinat[ion]" and "conspir[acy]" "[u]pon information and belief" and nothing more. Such pleading is insufficient. In *Montgomery*, the Fifth Circuit held that alleging an agreement without specific facts establishing the "time, date, or circumstance[s]" of the conspiracy failed to state a § 1983 conspiracy claim.[70] And in *Jabary v. City of Allen*, even allegations that officials "actively conspired" through "several conversations, private meetings, and other communications" were too conclusory to survive a Rule 12(b)(6) motion to dismiss.[71] Mumphrey alleges far less than the pleadings rejected in *Jabary*. Her complaint describes no conversation, meeting, or communication, and no time or place.

In any event, the only concerted action the complaint does describe—that members of the Sheriff's Office notified Bode that Mumphrey would be in custody—is not an agreement to deprive her of a constitutional right. Read generously, the allegation describes the sharing of information, not a "meeting of the minds" to accomplish an unconstitutional end.

---

[69] Rec. Doc. 36 ¶ 35.
[70] 759 F. App'x at 314.
[71] 547 F. App'x 600, 611 (5th Cir. 2013).

The defect is compounded by the manner of pleading. Mumphrey advances her conspiracy allegations against "Defendants" collectively, without distinguishing the conduct of Sheriff Smith from that of the School Board or any of its representatives. Collective allegations that fail to separate each defendant's conduct are inadequate to survive a motion to dismiss.[72] A § 1983 plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[73] The court will not "construe allegations contained in the [c]omplaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant and the [unconstitutional conduct] is specifically pled."[74] The requirement is heightened, not relaxed, where qualified immunity is at issue, because each official's entitlement to immunity must be assessed by reference to his own conduct.[75] Mumphrey's collective allegations do not satisfy that standard as to Smith.

Because Plaintiff alleges no underlying violation as to three of her theories and no plausible agreement or individualized conduct as to the fourth, the § 1983 conspiracy claim against Smith must be dismissed.

---

[72] *Armstrong v. Ashley*, 60 F.4th 262, 274-75 (5th Cir. 2023) ("Armstrong's allegation also suffers from the distinct problem of group pleading…"); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) ("Consistent with our rejection of the 'group pleading' doctrine, we do not construe allegations contained in the Complaint against the 'defendants' as a group as properly imputable to any particular individual defendant unless the connection between the individual defendant … is specifically pleaded.").

[73] *Ashcroft*, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

[74] *Southland Sec. Corp.*, 365 F.3d at 365 (citation modified).

[75] *Armstrong*, 60 F.4th at 274-75 (citing *Iqbal*, 556 U.S. at 676); *see also Marie Ramirez v. Guadarrama*, 844 F. App'x 710, 716, n.4 (5th Cir. 2021) ("Our precedent makes clear that 'we examine each individual's entitlement to qualified immunity separately.'") (quoting *Carroll v. Ellington*, 800 F.3d 154, 174 (5th Cir. 2015)).

### F. Official Capacity Claim

Mumphrey sues Smith in his official as well as his individual capacity. A suit against a sheriff in his official capacity is "in essence" a suit against the governmental entity he represents,[76] and qualified immunity is not a defense to it.[77] Such a claim is instead governed by *Monell*, under which a local government is liable only where an official policy or custom is the "moving force" behind a constitutional violation; it may not be held liable on a theory of respondeat superior.[78]

The official-capacity claim fails on two independent grounds. First, Mumphrey identifies no policy, custom, or practice of the St. Tammany Parish Sheriff's Office, and attributes no challenged conduct to a final policymaker.[79] Second, and independently, the Court holds herein that Mumphrey alleges no underlying constitutional violation by Smith or any employee of his office.[80] Without a constitutional injury, there is no ground for municipal liability.[81] The claims against Smith in his official capacity are dismissed with prejudice.

---

[76] *Brown v. Strain*, 663 F.3d 245, 251 (5th Cir. 2011) ("Because Strain is being sued in his official capacity as St. Tammany Parish Sheriff, the suit against him is 'in essence'" a suit against a municipality.")
[77] *Kentucky v. Graham*, 473 U.S. 159, 167 (1985).
[78] *Monell v. Department of Social Services*, 436 U.S. 658, 691, 694 (1978).
[79] Rec. Doc. 36; *see also Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted) ("isolated unconstitutional actions by municipal employees will almost never trigger liability.").
[80] *See supra* parts A-D.
[81] *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.").

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motion to Dismiss filed by Defendant Sheriff Randall Smith is **GRANTED**.

**IT IS FURTHER ORDERED** that the claims against Smith, in his individual and official capacity, are **DISMISSED WITH PREJUDICE**, including Plaintiff's § 1983 claims premised on the privilege against self-incrimination, the right to counsel; the right to privacy, and conspiracy, including her procedural due process theory insofar as it depends on an alleged conspiracy.

New Orleans, Louisiana, this 18th day of August, 2026.

Anna St John

ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE